UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| MATTHEW KURTENBACH,<br><br>Plaintiff,<br><br>-vs-<br><br>SECURUS TECHNOLOGIES,<br><br>Defendant. | Case No. 21-cv-01006-CBK |

**BRIEF IN SUPPORT OF SECURUS TECHNOLOGIES, LLC'S**
**MOTION TO DISMISS**

## I. INTRODUCTION

This case presents the complaint of serial jailhouse litigant Matthew Kurtenbach.[1] On this occasion, Mr. Kurtenbach names as Defendant Securus Technologies LLC (erroneously identified simply as "Securus Technologies"), and alleges that it violated both the federal Wiretap Act and Federal Communications Act ("FCA"). The gravamen of Mr. Kurtenbach's complaint is that the telephone systems Securus provides to several county jails in which he has spent time incarcerated recorded his jailhouse calls and charged a fee he disputes as just and reasonable.

---

[1] Mr. Kurtenbach is a felon, convicted in federal and state courts for a variety of crimes—a noted, habitual offender charged with grand theft, domestic violence, witness tampering, forgery, and distribution of methamphetamine, among other things. *See Kurtenbach v. Howell*, No. 1:20-CV-01007-CBK, 2020 U.S. Dist. LEXIS 79835 (D.S.D. May 6, 2020) (discussing his federal conviction and criminal history); *Kurtenbach v. Dooley*, No. 5:15-CV-05063-JLV, 2016 U.S. Dist. LEXIS 134751, *3 (D.S.D. Jul. 28, 2016) (discussing several of his convictions). Indeed, he has been deemed "a danger to the community." *United States v. Kurtenbach*, No. 5:17-CR-50071-JLV, 2017 U.S. Dist. LEXIS 121464, *2, 2017 WL 3309688 (D.S.D. Aug. 2, 2017). He is also a habitual filer of lawsuits, especially while incarcerated. *See, e.g., Kurtenbach v. Renville County*, No. 19-CV-2856 (NEB/LIB), 2021 U.S. Dist. LEXIS 78481 (D.S.D. Apr. 23, 2021); *Kurtenbach v. Codington Cty.*, No. 21-01009-JLV, 2021 U.S. Dist. LEXIS 69838, 2021 WL 1840529 (D.S.D. Apr. 12, 2021); *Kurtenbach v. City of Winner*, No. 19-3018-JLV, 2020 U.S. Dist. LEXIS 153189 (D.S.D. Aug. 24, 2020); *Kurtenbach v. South Dakota AG*, No. 16-5021-JLV, 2018 U.S. Dist. LEXIS 53208, 2018 WL 1542499 (D.S.D. Mar. 29, 2018); *Kurtenbach v. Malson-Rysdon*, No. 12-5047-JLV, 2012 U.S. Dist. LEXIS 189035 (D.S.D. Oct. 31, 2012).

With respect to the recordings, Mr. Kurtenbach fails to plausibly allege a Wiretap Act violation. Indeed, he does not and cannot dispute that incarcerated individuals of all stripes surrender basic privacy rights, including the anticipated confidentiality of phone conversations that most private citizens enjoy. *See Lanza v. New York*, 370 U.S. 139, 143 (1962) (noting that "[i]n prison, official surveillance has traditionally been the order of the day," and the same holds true for jails, as "it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room"); *see also, e.g., United States v. Van Poyck*, 77 F.3d 285, 290-1 (9th Cir.1996) ("[N]o prisoner should reasonably expect privacy in his outbound telephone calls."). The intentional interception or recording by Securus of phone calls involving incarcerated individuals like Mr. Kurtenbach is entirely permissible.

No doubt aware of this reality, Mr. Kurtenbach attempts to premise his Wiretap Act claim on the meager allegation that "at least one . . . call made by Kurtenbach to a law office, was intercepted, monitored, and/or recorded by Securus." ECF 1 (Compl.) ¶ 5. But this allegation is insufficient to state a viable Wiretap Act claim, as demonstrated by the fact that another federal court recently dismissed a claim against Securus that similarly alleged only that "Securus intended to record phone calls made from jail phones, not that Securus specifically intended to record attorney-client phone calls." *Pratt v. Securus Techs.*, No. 1:20-cv-00295-JDL, 2021 U.S. Dist. LEXIS 82661, *12, 2021 WL 1725936 (D. Me. Apr. 30, 2021). To satisfy the requirement for intent under the Wiretap Act, Mr. Kurtenbach needed to plead facts demonstrating that Securus deliberately targeted privileged calls for recording, not simply that one or more may have been recorded perhaps by accident or error. *See id.* at *17 ("Because the Complaint does not plausibly allege that Securus's "conscious objective" was to record attorney-client calls, it fails to state a claim that Securus violated the Federal Wiretap Act . . . .") (citation omitted).

Mr. Kurtenbach's FCA claim is problematic for reasons that are quite different, but equally dispositive. To begin with, "[c]ourts have consistently held that claims of unjust and unreasonable practices under 47 U.S.C. § 201(b) fall within the primary jurisdiction of the FCC." *Mojica v. Securus Techs., Inc.*, No. 5:14-CV-5258, 2015 U.S. Dist. LEXIS 12664, at *8 (W.D. Ark. Jan. 29, 2015) (quoting *Scott v. Pub. Comm. Servs.*, No. 4:11CV01882 ERW, 2012 U.S. Dist. LEXIS 13941, at *8, 2012 WL 381780 (E.D. Mo. Feb. 6, 2012)). Indeed, Mr. Kurtenbach's complaint admits that the FCC enjoys jurisdiction to determine the reasonableness of the very rates and fees he now seeks to challenge. *See* ECF No. 1 (Compl.) ¶¶ 9 and 10. Moreover, deference to the FCC's primary jurisdiction over such matters enables it to "promote uniformity and consistency within the particular field of regulation." *Access Telecomms. v. S.W. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (citing *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-04 (1976)).

Even if this Court elects to address the claim presented by Mr. Kurtenbach, it is readily apparent that he fails to plead a plausible claim. He identifies a regulatory rate cap of $0.21 per minute for interstate calls and an ancillary fee cap of $3.00 for funding pre-paid accounts. ECF No. 1 (Compl.) ¶ 10. But Mr. Kurtenbach fails to allege any rates or fees that he was charged in excess of these caps. He proceeds to complain that Securus would block accounts "until ownership of the account could be proven." *Id.* ¶ 11. But, once again, Mr. Kurtenbach fails to allege that such action is in any way inconsistent with the governing regulations or legitimate security concerns requiring true ownership to be disclosed, lest a call be terminated by Securus.

The Court should dismiss this frivolous suit by a serial (incarcerated) litigant.

## II. STATEMENT OF ALLEGED FACTS

Mr. Kurtenbach is an individual who has been incarcerated on and off for well-over a decade—spending time in recent years at the Sherburne County Jail in Elk River, Minnesota, the

Pennington County Jail in Rapid City, South Dakota, and the Codington County Jail in Watertown, South Dakota. ECF No. 1 (Compl.) ¶ 2. His complaint purports to allege two claims without identifying any supporting facts. To plead his Wiretap Act claim, Mr. Kurtenbach formulaically recites that Securus "intentionally intercepts, monitors, and/or records wire, electronic, and oral communications" at the carceral facilities named in his complaint. *Id.* ¶ 4. Without adding much detail, he also avers that "[o]n at least one occasion a call made by Kurtenbach to a law office, was intercepted, monitored, and/or recorded by Securus." *Id.* 5.

Tellingly, Mr. Kurtenbach pleads no other facts about this one call he made to a law office. For example, he does not specify that he ever spoke with an attorney and solicited—and the attorney delivered—legal advice during the call. Mr. Kurtenbach likewise does not plead any facts supporting his alleged "subjective and objective expectation of privacy," such as steps that he took to advise the carceral facilities in which he was housed that calls made to the phone number associated with the law office should not be recorded. *Id.* ¶ 6. Mr. Kurtenbach does not even describe how he came to learn of the call recording about which he complains, leaving unclear whether he has a genuine basis for making the allegation or is simply parroting an allegation made in another recent (and rejected) lawsuit. *See Pratt v. Securus Techs.*, No. 1:20-cv-00295-JDL, 2021 U.S. Dist. LEXIS 82661, 2021 WL 1725936 (D. Me. Apr. 30, 2021)

With respect to his FCA claim, Mr. Kurtenbach pleads a bare conclusion that Securus engaged in unjust and unreasonable practices. Indeed, despite specifying regulatory caps for interstate minutes and ancillary fees, Mr. Kurtenbach nowhere alleges that Securus charged him more than the caps. The closest he comes is a speculative assertion that "*if* Securus terminated the call after fifteen seconds the fifteen second call *would* cost over $3.00." ECF 1 (Compl.) ¶ 13 (emphases added). But he never avers that Securus actually did this to him at any time.

4

## III. GOVERNING LEGAL STANDARDS

Plaintiffs must plead a plausible claim to survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. The Court may accordingly disregard any "legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). The liberal construction of *pro se* pleadings does not alter these fundamental standards. *See, e.g., Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions."); *Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981) (noting that even the complaint of a *pro se* litigant "must contain something more than mere conclusory statements that are unsupported by specific facts").

"Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making," and "allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court." *Access Telecomms.*, 137 F.3d at 608. "One reason courts apply the doctrine of primary jurisdiction is to obtain the benefit of an agency's expertise and experience," particularly "'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion.'" *Id.* (quoting *Far East Conference v. United States*, 342 U.S. 570, 574 (1952)). "Another reason is to promote uniformity and consistency within the particular field of regulation." *Id.* (citing *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-04 (1976)). "There is no fixed formula for applying the doctrine of primary jurisdiction." *Atlantis Express, Inc. v. Standard Transp. Servs.*, Inc., 955 F.2d 529, 532 (8th Cir.

1992). In each case the court should simply consider if "applying the doctrine will aid the purposes for which the doctrine was created." *Access Telecomms.*, 137 F.3d at 608.

IV. **ARGUMENT**

A. **The Court Should Dismiss Mr. Kurtenbach's Implausible Wiretap Act Claim**

Mr. Kurtenbach makes only the most conclusory allegation, bereft of any supporting—let alone plausibly pleaded—facts, that Securus "intentionally intercepts, monitors, and/or records wire, electronic, and oral communications" in violation of the Wiretap Act, 18 U.S.C. § 2510 *et seq.* ECF No. 1 (Compl.) ¶ 4.

The omission of specific facts elaborating upon this conclusory allegation of intent is particularly important because the Wiretap Act's use of the term "intentional" is narrower than used in common parlance. When the Senate Judiciary Committee recommended the passage of the Electronic Communications and Privacy Act of 1986 ("ECPA"), which amended the Wiretap Act to require "intentional" rather than "willful" conduct, it thus explained as follows:

> [T]he term "intentional" [in this context] is narrower than the dictionary definition of "intentional." "Intentional" means more than that one voluntarily engaged in conduct or caused a result. *Such conduct or the causing of the result must have been the person's conscious objective. . . .* The "intentional" state of mind is applicable only to conduct and results. Since one has no control over the existence of circumstances, one cannot "intend" them.

S. Rep. No. 99-541, at 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3577 (emphasis added); *see also In re Pharmatrak*, 329 F.3d 9, 23 (1st Cir. 2003); *United States v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993); *Butera & Andrews v. IBM Corp.*, 456 F. Supp. 2d 104, 110 (D.D.C. 2006). An allegation tantamount to averring that a defendant "'should have known' . . . is not sufficient to adequately establish the intent necessary to find a [Wiretap Act] violation." *In re HIPAA Subpoena (Patient Servs.),* 961 F.3d 59, 66 (1st Cir. 2020).

Mr. Kurtenbach attempts to embellish his assertion that Securus "intentionally" intercepted his telephone calls while incarcerated, averring the inclusion of, "[o]n at least one occasion[,] a call made by Kurtenbach, to a law office." ECF No. 1 (Compl.) ¶¶ 4-7. This allegation also falls short of stating a viable claim because it fails to plead the "specific facts" required to support a conclusion that Securus violated the Wiretap Act, even for a *pro se* litigant. *Martin*, 780 F.2d at 1337; *Kaylor*, 661 F.2d at 1183. Indeed, without pleading specific facts about Securus deliberately targeting privileged calls for recordings, Mr. Kurtenbach's allegation about intent constitutes a mere "legal conclusion couched as a factual allegation" that this Court should disregard. *Papasan*, 478 U.S. at 286. Moreover, without specific facts to identify even one recording of a genuinely privileged discussion—in contradistinction to a single, unidentified call simply *made to a law office*—Mr. Kurtenbach fails to state a claim that the recording was impermissible in any way.

For precisely this reason, other courts facing similarly deficient pleadings have dismissed claims purportedly based on the Wiretap Act. *See, e.g., Pratt v. Securus Techs.,* No. 1:20-cv-00295-JDL, 2021 U.S. Dist. LEXIS 82661 (D. Me. Apr. 30, 2021) (dismissing federal Wiretap Act claim "[b]ecause the Complaint does not plausibly allege that Securus's 'conscious objective' was to record attorney-client calls"); *Evans v. Skolnik*, No. 3:08-cv-00353-RCJ-VPC, 2009 U.S. Dist. LEXIS 104430, at *13-16 (D. Nev. Oct. 2, 2009) (dismissing federal Wiretap Act claim premised on conclusory allegations that defendants "intentionally" intercepted his attorney-client telephone calls), *aff'd* 637 F. App'x 285, 287 (9th Cir. 2015).

Independently, Mr. Kurtenbach alleges no facts to plausibly suggest that Securus did anything outside the ordinary scope of its business when it passively recorded calls made on jailhouse phones. The Wiretap Act provides that "it shall not be unlawful for an . . . electronic communications service . . . to intercept, disclose, or use that communication in the normal course

of its employment while engaged in any activity which is a necessary incident to the rendition of its service." 18 U.S.C. §2511(2)(a)(ii). Because Mr. Kurtenbach has not alleged that Securus took any actions outside of its "normal course of employment" as a telephone service contractor for South Dakota carceral facilities that were not "necessary incidents to the rendition of its service," it simply did not violate the Wiretap Act.

Moreover, the Wiretap Act provides an exception to liability for equipment being used by "an investigative or law enforcement officer in the ordinary course of his duties."[2] 18 U.S.C. § 2510(5)(a)(ii). The "routine and almost universal recording of phone lines by police departments and prisons, as well as other law enforcement institutions, is exempt from the statute" for precisely this reason. *Adams v. City of Battle Creek*, 250 F.3d 980, 984 (6th Cir. 2001). This exception extends to private persons "operating under a contract with the Government, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception." 18 U.S.C. § 2518(5); *see, e.g., United States v. Rivera*, 292 F. Supp. 2d 838, 843 (E.D. Va. 2003); *see also, e.g., Randolph v. Nev. ex rel. Nev. Dep't of Corr.*, 3:13-cv-148-RCJ-WGC, 2013 U.S. Dist. LEXIS 154935, at \*15-\*16, 2013 WL 5818894 (D. Nev. Oct. 29, 2013) (granting prison telephone contractor's motion to dismiss with prejudice despite recording attorney-client privileged calls because of the law enforcement exception).

B. **The Court Should Defer to The FCC to Address Mr. Kurtenbach's FCA Claim**

Mr. Kurtenbach's claim that the rates and fees of Securus are unjust and unreasonable under Section 201(b) of the FCA presents an issue directly within the FCC's primary jurisdiction to resolve. *See Mojica v. Securus Techs., Inc.*, No. 5:14-CV-5258, 2015 U.S. Dist. LEXIS 12664,

---

[2] Liability under Title III of the ECPA requires interception "through the use of any electronic, mechanical, or other device." 18 U.S.C. §§ 2510(4), 2511(1). Law enforcement officers operating in the ordinary course of their duties are not using a "device" for purposes of the ECPA. *Id.*

at *8 (W.D. Ark. Jan. 29, 2015) ("[C]laims of unjust and unreasonable practices under 47 U.S.C. § 201(b) fall within the primary jurisdiction of the FCC.") (quoting *Scott*, 2012 U.S. Dist. LEXIS 13941 at *8); *see also, e.g., Sancom, Inc. v. AT&T Corp.*, 696 F. Supp. 2d 1030, 1042 (D.S.D. 2010) (citing *Qwest Corp. v. Scott*, 380 F.3d 367, 375 (8th Cir. 2004)); *Sprint Communs. Co., L.P. v. Native Am. Telecom, LLC*, 2012 U.S. Dist. LEXIS 22205, at *16 (D.S.D. Feb. 22, 2012); *Sprint Spectrum L.P. v. AT&T Corp.*, 168 F. Supp. 2d 1095, 1100 (W.D. Mo. 2001).

Moreover, "the FCC has repeatedly exercised its authority over inmate calling services." *Scott*, 2012 U.S. Dist. LEXIS 13941 at *8-*9 (citing *Miranda v. Michigan*, 141 F. Supp. 2d 747, 760 (E.D. Mich. 2001)). This practice makes sense because doing so "promote[s] uniformity and consistency" rather than the *ad hoc* and inconsistent determinations that would frustrate the FCC's regulatory authority in such matters. *Access Telecomms.*, 137 F.3d at 608; *cf. Sprint Spectrum L.P.*, 168 F. Supp. at 1100 ("The Court believes that the need for uniformity in regulation of wireless carriers' access fees is important, for if the question is left to courts in the first instance, the possible result is a patchwork of regulations that may ultimately lead to competitive advantage for certain wireless carriers.").

Referral to the FCC is particularly appropriate in this case, because Mr. Kurtenbach does not allege that Securus charged any rate or fee in excess of those authorized by the FCC. Rather, Mr. Kurtenbach appears to contend that Securus made charges precisely in the manner authorized by the regulatory language of the FCC, but nevertheless somehow "thwart[ed] the purpose and spirit of the FCA." ECF No. 1 (Compl.) ¶ 15. Such considerations of the FCC's intent in crafting policy and its ultimate application fall precisely within the ambit of the FCC's primary jurisdiction. *See Access Telecomms.*, 137 F.3d at 608 (noting the applicability of the doctrine in "cases requiring the exercise of administrative discretion" in setting policy).

### C. The Court Should Dismiss Mr. Kurtenbach's Implausible FCA Claim

In lieu of referring Mr. Kurtenbach's FCA claim to the FCC, the Court should simply dismiss it because it only vaguely challenges a policy rather than stating a plausible legal claim. The FCC "may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of" its enabling statute. 47 U.S.C. § 201(b). Mr. Kurtenbach generally recites a regulatory rate cap of $0.21 per minute for interstate calls and an ancillary fee cap of $3.00 for funding pre-paid accounts set by the FCC. ECF No. 1 (Compl.) ¶ 10. He fails to allege the Securus actually charged any rates or fees to him in excess of these caps, complaining principally instead that Securus would block accounts "until ownership of the account could be proven." *Id.* ¶ 11. Mr. Kurtenbach fails to allege that such action is in any way inconsistent with the governing regulations or legitimate security concerns requiring true ownership to be disclosed, lest a call be terminated by Securus. His assertion that Securus somehow "thwart[ed] the purpose and spirit of the FCA," *id.* ¶ 15, is likewise devoid of any clear explanation of wrongdoing. Accordingly, the Court should dismiss this claim.

### V. CONCLUSION

For all the foregoing reasons, Securus respectfully requests that the Court grant its motion to dismiss in its entirety.

Dated: June 17, 2021                    Respectfully submitted,

  /s/ Zachary W. Peterson
*Counsel for Defendant Securus Technologies, LLC*

RICHARDSON, WYLY, WISE,
SAUCK & HIEB, LLP
1 Court Street
Aberdeen, SD 57401
Telephone: (605) 225-6310
Email: ZPeterson@rwwsh.com

Motions for Admission *Pro Hac Vice* forthcoming for:
Adam R. Fox (CABN 220584)
Gabriel Colwell (CABN 216783)
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 624-2500
Email: Adam.Fox@SquirePB.com
       Gabriel.Colwell@SquirePB.com

# CERTIFICATE OF SERVICE

      The undersigned, one of the attorneys for Defendant Securus Technologies, LLC, hereby certifies that on the 16th day of June, 2021, a true and correct copy of **BRIEF IN SUPPORT OF SECURUS TECHNOLOGIES, LLC'S MOTION TO DISMISS** was sent for service by first-class U.S. mail to:

Mr. Matthew C. Kurtenbach
Inmate #262814
MCF Faribault
1101 Linden Lane
Faribault, MN 55021

Dated: June 17, 2021                    Respectfully submitted,

                                          /s/ Zachary W. Peterson
                                    *Counsel for Defendant Securus Technologies, LLC*

                                    RICHARDSON, WYLY, WISE,
                                    SAUCK & HIEB, LLP
                                    1 Court Street
                                    Aberdeen, SD 57401
                                    Telephone: (605) 225-6310
                                    Email: ZPeterson@rwwsh.com

                                    Motions for Admission *Pro Hac Vice* forthcoming for:
                                    Adam R. Fox (CABN 220584)
                                    Gabriel Colwell (CABN 216783)
                                    Squire Patton Boggs (US) LLP
                                    555 South Flower Street, 31st Floor
                                    Los Angeles, California 90071
                                    Telephone: (213) 624-2500
                                    Email: Adam.Fox@SquirePB.com
                                                Gabriel.Colwell@SquirePB.com